ORIGINAL

GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

BRUCE L. LAMON            2738-0
   blamon@goodsill.com
Alii Place, Suite 1800
1099 Alakea Street
Honolulu, Hawai'i 96813
Telephone: (808) 547-5600
Facsimile: (808) 547-5880

SHEPPARD MULLIN RICHTER & HAMPTON
LLP

M. ROY GOLDBERG (Pro Hac Vice Pending)
   rgoldberg@shepppardmullin.com
CHRISTOPHER M. LOVELAND (Pro Hac Vice
Pending)
   cloveland@shepppardmullin.com
1300 I Street, N.W., Suite 1100 East
Washington, D.C. 20005-3314
Tel. (202) 218-0007
Fax (202) 312-9425

Attorneys for Plaintiff
AIR TRANSPORT ASSOCIATION OF
AMERICA, INC.,

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 29 2010

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| AIR TRANSPORT ASSOCIATION OF AMERICA, INC., Plaintiff, vs. | CIVIL NO. CV 10 00444 DAE BMK COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF; EXHIBITS A-C; SUMMONS |
| --- | --- |

3039153.1

LINDA LINGLE, in her Official
Capacity as Governor of the State of
Hawai'i, and SANDRA LEE
KUNIMOTO, in her Official Capacity
as Chairperson of the Hawai'i
Department of Agriculture,

Defendants.

## COMPLAINT FOR DECLARATORY
## JUDGMENT AND INJUNCTIVE RELIEF

1.      Plaintiff the Air Transport Association of America, Inc.

("Plaintiff" or "ATA"), on behalf of its member air carriers, seeks declaratory and

injunctive relief with regard to Hawaiian Revised Statute § 150A, as amended by

Act 173, S.B. No. 2523 (2010) (hereafter the "Freight Fee Law").  The Freight Fee

Law unlawfully imposes fees and fines in connection with the sale of interstate and

international air transportation.  A copy of Act 173, which amended the previous

version of the Freight Fee Law and became effective July 1, 2010, is provided as

Exhibit A hereto.

## INTRODUCTION

2.      As amended by Act 173, the Freight Fee Law requires air

carriers which sell transportation of freight into Hawaii by aircraft to bill their

customers a freight inspection fee based on the net weight of the freight (the

"Freight Fee"), and imposes a fine of $50 or more per transaction if the air carrier

fails to timely invoice its customers for the Freight Fee, and remit payment of the

Fee to the Hawaii Department of Agriculture ("HDOA").  The HDOA asserts that Act 173 renders air carriers liable for these obligations retroactive to August 1, 2008.

   3. By requiring air carriers to invoice and remit the Freight Fee, the Freight Fee Law violates and is preempted by the Anti-Head Tax Act ("AHTA"), currently codified at 49 U.S.C. § 40116, because it imposes a "charge" on the sale of the transportation of "property by aircraft."  The Freight Fee Law also violates the Airline Deregulation Act ("ADA") (also known as the Federal Aviation Administration Authorization Act), currently codified at 49 U.S.C. § 41713(b)(1), because it is a "law . . . related to a price, route, or service of an air carrier" for which no statutory exemption applies.   In addition, the Freight Fee Law violates several provisions in the United States Constitution, as set forth below.

   4. On July 28, 2010, the ATA filed a "Petition for Declaratory Order" with the United States Department of Transportation ("DOT") which seeks a ruling by the DOT that the application of the Freight Fee Law to air carriers violates and is preempted by the AHTA and the ADA.  A copy of the Petition is provided as Exhibit B hereto.

   5. The DOT has primary jurisdiction over the issue of whether the Freight Fee Law violates and is preempted by the AHTA and the ADA.

Accordingly, the Court should issue an order declaring that the DOT possesses primary jurisdiction, and staying this litigation (and enforcement of the Freight Fee Law as to air carriers) until after the DOT has acted on the Petition for Declaratory Order.  Alternatively, the ATA requests that the Court issue a declaratory judgment that the Freight Fee Law is unlawful as applied to air carriers, and a preliminary and permanent injunction against enforcement of the Freight Fee Law as to air carriers.

JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because, as set forth herein, this case arises under the "Constitution" and "laws" of the United States, and pursuant to 28 U.S.C. §§ 2201 and 2202, because this case presents an actual controversy in which Plaintiff seeks a declaratory judgment.  Jurisdiction also exists under 28 U.S.C. § 1337 because this case is a proceeding "arising under" one or more "Act[s] of Congress regulating commerce."

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants are residents of, are found within, and have agents within, or transact their affairs in this District, and the activities giving rise to this action occurred in this District.

## PARTIES

8.      Plaintiff the Air Transport Association of America, Inc. is the principal trade and service organization for the U.S. scheduled service industry. Members are: ABX Air, AirTran Airways, Inc., Alaska Airlines, American Airlines, ASTAR Air Cargo, Atlas Air, Inc., Continental Airlines, Inc., Delta Air Lines, Inc., Evergreen International Airlines, Inc., Federal Express Corporation, Hawaiian Airlines, Inc., JetBlue Airways Corp., Southwest Airlines Co., United Airlines, Inc., United Parcel Service Co., and US Airways, Inc.  Associate members are Air Canada, Air Jamaica and Mexicana Airlines.  Hawaiian Airlines does not join in this Complaint.

9.      ATA members account for more than 90 percent of the passenger and cargo traffic carried annually by U.S. scheduled air carriers.

10.      As of July 1, 2010, ATA member air carriers operated approximately 795 flights each week into airports in Hawaii.

11.      ATA files this action on behalf of its members under the doctrine of representational standing in that (a) its members would otherwise have standing to bring this action in their own right; (b) the interests ATA seeks to protect are germane to the organization's purpose; and (c) neither the claims asserted nor the relief requested require the participation of individualized

members in the action.  Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

12.     Defendant Linda Lingle is the Governor of the State of Hawaii, sued in her official capacity.  Defendant Lingle's office address is Office of the State Capitol, Honolulu, Hawaii, 96813.

13.     Governor Lingle is a proper defendant because the Governor signed Act 173 into law, and has direct authority over and principal responsibility for enforcing the Freight Fee Law and to advise HDOA, or other state agencies or individuals, to issue regulations, standards, or directives relating to the Freight Fee law. *See HRPT Properties Trust v. Lingle*, No. 09-00375, SOM/KSC, __ F. Supp. 2d __, 2010 WL 2194722, at *23-35 (D. Haw. May 31, 2010).

14.     Defendant Sandra Lee Kunimoto is Chairperson of the State of Hawaii Department of Agriculture, sued in her official capacity.  Defendant Kunimoto's office address is 1428 South King Street,  Honolulu, Hawaii, 96814. Chairperson is a proper defendant because she is the head of the state agency with direct authority and the practical ability to enforce the Freight Fee Law. *See Nat'l Audbon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846 (9th Cir. 2002).

STATEMENT OF FACTS

The Hawaii Freight Fee Law

15.     During the 2008 Legislative Special Session, the Hawaiian

Legislature enacted HB2843, which was codified as Hawaii Revised Statute

Chapter 150A.  The effective date of the statute was August 1, 2008.

16.     As originally enacted, Section 150A-5.3 stated:

**Inspection, quarantine, and eradication service fee and charge.**

There is imposed a fee for the inspection, quarantine, and eradication
of invasive species contained in any freight, including but not limited
to marine commercial container shipment, air freight, or any other
means of transporting freight, foreign or domestic, that is brought into
the state.  The fee shall be paid by the person responsible for paying
the freight charges to the transportation company, who shall collect
the fee and forward the payment to the department at the port of
disembarkation; provided that the transportation company shall not be
liable for any fee that is not paid by the person responsible for paying
the freight charges to the transportation company.  The department
shall deposit the fee into the pest inspection, quarantine, and
eradication fund under section 150A-4.5.

The fee shall be assessed on the net weight of the imported freight
computed on the basis of 50 cents for every one thousand pounds of
freight brought into the state, or part thereof.

17.     Hawaii Revised Statute § 150A-2 defines "freight" to mean

"nonpassenger goods, cargo, or lading transported for pay."

18.     In a letter dated September 12, 2008 to the Airlines Committee

of Hawaii Defendant Kunimoto stated that "U.S. mail is generally not subject to

inspection under federal law and is not subject to state agricultural inspection and the new fee." Letter, at 2.

> Act 173 Amended the Freight Fee Law to Impose
> New Obligations and Fines on Air Carriers

19.    On or about June 23, 2010 Defendant Lingle signed Act 173 into law, and Act 173 became effective July 1, 2010.

20.    Act 173 amended Hawaii Revised Statute § 150A to impose on transportation companies – including air carriers – "fines for failure to timely pay, bill, or remit the past inspection, quarantine, and eradication service fee." Exhibit A, at 1.

21.    As amended by Act 173, Hawaii Revised Statute § 150A-5.3 states that the "fee shall be assessed and collected on the net weight of the imported freight computed on the basis of 50 cents for every one thousand pounds of freight brought into the state, or part thereof." Exhibit A, at 7.  It further provides, *inter alia*:

> The transportation company shall bill the fee to the person responsible for paying the freight charges to the transportation company within fifteen days of the delivery of the freight.  The fee shall be paid by the person responsible for paying the freight charges to the transportation company within forty-five days of receipt of the bill.  The transportation company shall collect the fee from the person responsible and forward the payment to the department at the port of disembarkation within forty-five days of receipt of the fee; provided that the transportation company shall not be liable for any fee that is not paid by the person responsible for paying the freight charges to the transportation company.

*Id.* at 6.

22.    As amended by Act 173, the Freight Fee Law currently provides that if a "transportation company . . . fails to [b]ill the fee, within fifteen days of the delivery of the freight, to the person responsible for paying the freight charges to the transportation company," or to "[r]emit the fee to the [state] department within forty-five days of collecting the fee" the transportation company must "pay a fine of two times the amount of the inspection, quarantine, and eradication service fee or $50, whichever is higher."  Exhibit A, at 2-3.

23.    As amended by Act 173, Hawaii Revised Statute § 150A-4.5 establishes "in the state treasury the pest inspection, quarantine, and eradication fund," which shall consist of, *inter alia*, "[s]ervice fees, charges, and penalties collected under section 150A-5.3," and "[f]ines for violations of this chapter." Exhibit A, at 4.  In addition, the "moneys in the pest inspection, quarantine, and eradication fund shall be expended by [HDOA] for [*inter alia*] the operation of biosecurity and pest inspection, quarantine, eradication, and monitoring programs, related facilities, the execution of emergency remedial measures when pests are detected in the course of inspection and quarantine activities by the department, training of inspectors, education of the agricultural industry, permit and certificate holders, and the general public as to import requirements, and for any other purposes deemed necessary to carry out the purposes of this chapter." *Id.* at 5.

24.    In a memorandum "to Transportation Companies" dated July 7, 2010, the HDOA Plant Quarantine Branch ("PQB") stated that "both air and marine transportation companies that bring freight into the State have been required to collect the current service fee on incoming freight as of August 1, 2008, pursuant to Act 3, Session Laws of Hawaii, 2008."   Exhibit C hereto, at 1.  HDOH added that:

> As a result of Act 173, from **July 1, 2010**, all transportation companies bringing freight into the State . . . must bill the above-referenced service fee, within 15 days of freight delivery, to the person responsible for paying the freight charges and remit the payment, within 45 days of collecting it, to the HDOA, Plant Quarantine Branch (HDOA-PQB) at the port of disembarkation. Transportation companies that do not comply with this requirement will be subject to the fine [set forth in Act 173].

Id. at 2 (emphasis in original).  The agency further stated that "transportation companies continue to be subject to the fee collection requirement as of August 1, 2008, *and are responsible for payment of current and past due fees*."  *Id.* (emphasis added).

25.    The HDOA also has instructed that, "[a]long with the fee payments, a written statement" by transportation companies "should be provided to HDOA-PQ that reflects the collection period dates; port of entry for the freight for which the fees were collected; net weight of the freight for which each fee was collected, by flight/voyage; total net weight of all freight reported for the collection

period; and the total fee amount paid." Exhibit C, at 2. *See also* the "Service Fee Reporting Form" attached thereto.

>The Freight Fee Law Subjects Air Carriers to Onerous
>Fiscal and Administrative Burdens

26.     The Freight Fee Law imposes severe fiscal and administrative burdens on air carriers.

27.     To be able to bill their customers for the Freight Fee most if not all of the air carrier members of Plaintiff will be required to expend enormous amounts of time and capital to conceive, design, plan, develop, test and implement the new information technology and accounting infrastructures necessary for such a task.

28.     The requirement that the fees be imposed on the "net weight" of the imported freight is burdensome.  It will require airline members of Plaintiff to alter significantly the business practices they employ for their freight customers. The airline industry generally does not use "net weight" because packaging weight is a factor.  Rather, airlines use "gross weight" to calculate and track freight shipments.

29.     Imposition of the Freight Fee with regard to transportation of freight on aircraft into Hawaii from foreign countries is duplicative of inspection fees that must be paid to the U.S. Department of Agriculture Animal and Plant Health Inspection Service ("APHIS").  21 U.S.C. § 136a(a)(A).  The current

"APHIS" inspection fee for commercial aircraft flying from foreign countries into Hawaii (including the Plaintiff's member airlines) is $70.75 per landing. 7 C.F.R. § 354.3(e). In addition, aircraft passengers arriving from foreign countries are charged $5.00 in APHIS inspection fees. 7 C.F.R. § 354.3(f).

30. The members of Plaintiff ATA will suffer irreparable injury if enforcement of the challenged provisions of the Freight Fee Law are not enjoined. Being subjected to an unconstitutional law constitutes irreparable harm. In addition, ATA's member air carriers face the prospect of significant fines for violations of the unconstitutional law. As in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992), Plaintiff's members are "faced with a Hobson's choice: continually violate the [state] law and expose themselves to potentially huge liability; or violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review."

31. Enforcement of the Freight Fee Law with respect to air carrier members of Plaintiff constitutes an impermissible burden and restriction on interstate and foreign commerce by the State of Hawaii.

32. Plaintiff's member air carriers have no adequate remedy at law with regard to the significant expenses they will need to expend to comply with the requirements of the Freight Fee Law. The harm is also irreparable due to the Eleventh Amendment bar to an award of retrospective monetary damages against a

state.  If an injunction is granted, the Defendants will not suffer any cognizable
harm.  Defendants cannot claim injury from an order compelling them to comply
with pre-existing Federal law.  Far greater injury will be inflicted upon the member
carriers of the Plaintiff by the refusal to grant the relief sought herein than
Defendants will suffer by the grant of the declaratory and injunctive relief
requested.

<u>The Anti-Head Tax Act</u>

33.    The Anti-Head Tax Act ("AHTA") prohibits a "charge" on the
sale of transportation of "property by aircraft."  Under the AHTA, no State may
"levy or collect a tax, fee, head charge, or other charge on . . . the sale of air
transportation."  49 U.S.C. § 40116(b)(3).

34.    Congress intended the AHTA to prevent the undue burden on
interstate commerce and the economic harm on airlines, passengers and shippers
that would be the natural result if state and local governments were left to their
own devices to raise general revenues on the back of commercial aviation.  Only
under certain enumerated exceptions to the statute's general prohibition may state
and local authorities impose and collect such taxes and fees.

35.    The prohibition against the imposition of a "tax, fee, head
charge, or other charge" on the "sale of air transportation" applies to the sale of
transportation of freight by air.  "Air transportation" – as used in the AHTA –

includes "interstate air transportation," "foreign air transportation," and "the transportation of mail by aircraft." 49 § 40102(a)(5). "Interstate air transportation" includes the "transportation of . . . property by aircraft as a common carrier for compensation, or the transportation of mail by aircraft" between two American states. § 40102(a)(25) (emphasis added). In addition, "Foreign air transportation" includes the "transportation of . . . property by aircraft as a common carrier for compensation, or the transportation of mail by aircraft, between a place in the United States and a place outside the United States when any part of the transportation is by aircraft." § 40102(a)(23) (emphasis added).

36.    The Hawaii Legislature was aware of the AHTA when it enacted Act 173. The House Committee on Agriculture amended an earlier version of the new bill to change the Freight Fee from a tax to a fee, acknowledging concerns that a tax "may conflict with federal laws, such as the Anti-Head Tax Act." Standing Committee Report No. 393-10 on H.B. No. 2294 (Feb. 12, 2010). However, the AHTA covers fees as well as taxes.

The Airline Deregulation Act

37.    Under the Airline Deregulation Act, with certain limited (and inapplicable) exceptions, "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or

service of an air carrier that may provide air transportation under this subpart."  49 U.S.C. § 41713(b)(1).

38.    As used in the ADA, "Related to" . . . "express[es] a broad preemptive purpose"; a state law or enforcement action is "related to" a "price, route, or service" if it "has a connection with reference to a "price, route, or service.  The Supreme Court in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992), held that the use of the words "related to" in the preemption provisions of the ADA "express a broad pre-emptive purpose" and prohibit all state laws "relating to" the rates, routes or services of an air carrier.  *Id*.  Congress expressly endorsed the holding in *Morales* in 1994 when it enacted the recodified Title 49 into law, noting that it "did not intend to alter the broad preemption interpretation adopted by the United States Supreme Court in *Morales*."  H.R. Conf. Rep. No. 103-677 at p. 83 (1994); *see also Sanchez v. Aerovias de Mexico, S.A.*, 590 F.3d 1027, 1029 (9th Cir. 2010) ("Related to" . . . "express[es] a broad preemptive purpose"; a state law or enforcement action is "related to" a "price, route, or service" if it "has a connection with reference to a "price, route, or service) (citing *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 36 (1st Cir. 2007)).

39.    ADA preemption applies to both direct and indirect effects on air carriers.  *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1300 (S.D. Fla. 2008) (the ADA preempted amendments to Florida Sellers of Travel Act – the

amendments directly affected travel agents as "indirect" air carriers and "for a state

law to be preempted, . . . amendments need not directly regulate an air carrier.

Regulation of other individuals or entities, if such regulation will have an effect on

price, route or service of a direct or indirect air carrier, is preempted"); *Marlow v.*

*AMR Services Corp.*, 870 F. Supp. 295, 298 (D. Haw. 1994) (state enforcement

actions which have a connection with or reference to airline rates, routes or

services are preempted by the ADA. The laws do not have to actually prescribe

rates, routes or service); *cf. Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364

(2008) (preemption under Federal Aviation Administration Authorization Act even

if the state law's effect on rates, routes or services is only indirect).

<u>CLAIMS FOR RELIEF</u>

<u>COUNT ONE</u>

(Primary Jurisdiction of the U.S. Department of Transportation)

40.     Plaintiff repeats and realleges the foregoing paragraphs of the

Complaint as though fully set forth herein.

41.     An actual case or controversy exists by reason of the enactment

of Act 173 and the interpretation and threatened enforcement of the Freight Fee

Law (as amended by Act 173) as to the member air carriers of ATA by Defendant

Kunimoto and her department.  *See* Exhibit C hereto.

42.     Under the doctrine of "primary jurisdiction," courts may decline to decide issues that are within the special competence of an administrative agency. *North County Communications Corp. v. California Catalog & Technology*, 594 F.3d 1149, 1156, 1162 (9th Cir. 2010) (citing *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008)).  The doctrine is designed to protect agencies possessing quasi-legislative powers and that are actively involved in the administration of regulatory statutes. *Id.*; *see also Clark*, at 1115 ("When a district court determines that primary jurisdiction applies, it enables a 'referral' of the issue to the relevant agency.  In practice, this means that the court either stays proceedings or dismisses the case without prejudice, so that the parties may seek an administrative ruling") (citations omitted).

43.     The U.S. Department of Transportation has primary jurisdiction over the issue of whether the Freight Fee Law, as applied to air carriers, violates and is preempted by the AHTA and ADA.

44.     There is clear precedent for the exercise of primary jurisdiction by DOT with regard to the lawfulness of the Freight Fee Law as applied to air carriers. *See, e.g., Tinicum Township Privilege Fee Proceeding*, Order 2008-3-18, Docket OST-2007-29341, at 15 (March 24, 2008), *aff'd, Township of Tinicum v. United States*, 582 F.3d 482 (3d Cir. 2009) (DOT has "authority over the" Tinicum Township "privilege fee" on airlines landing at Philadelphia International Airport

"under the Secretary's authority to rule on questions pertaining to the Anti-Head

Tax Act (AHTA) and to issue declaratory rulings interpreting that provision. The

Administrative Procedure Act authorizes us to issue declaratory orders");

Declaratory Order, Docket OST-2006-25612, Order 2007-4-4 (April 4, 2007)

(DOT granted a petition for declaratory order by Hawaiian Airlines, and ruled that

the attempts by American Samoa to prevent the carrier from serving the territory

violated the ADA); Instituting Order, *Love Field Service Interpretation Proc.,*

OST-98-4363, Order 98-8-29 (Aug. 25, 1998) (dealing with Love Field usage);

*American Airlines, Inc. v. DOT,* 202 F.3d 788 (5th Cir.), *cert. denied,* 530 U.S.

1284 (2000) (affirming DOT ruling regarding meaning of Shelby Amendment for

Love Field); *Fontan-de-Maldonado v. Lineas Aereas Costarricenses, S.A.*, 936

F.2d 630 (1st Cir. 1991) (validity of airline's tariff provision precluding airline's

liability for information given by employee to passenger was matter within primary

jurisdiction of the DOT); *New England Legal Found. v. Mass. Port Auth.*, 853 F.2d

157 (1st Cir. 1989) (DOT had primary jurisdiction over whether landing fees at

Boston airport violated federal statute).

      45.    Accordingly, this Court should issue an order: (a) declaring that

the U.S. Department of Transportation has primary jurisdiction over the Plaintiff's

challenge to the Freight Fee Law and (b) staying the application of Freight Fee

Law to air carriers until after the DOT rules on the "Petition for Declaratory Order" pending before it.

## COUNT TWO

### (The Anti-Head Tax Act)

46.     Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as though fully set forth herein.

47.     The Freight Fee Law, as applied to air carriers, violates and is preempted by the Anti-Head Tax Act, 49 U.S.C. § 40116(b), because it is a charge on the transportation of goods in air commerce and a charge on the sale of air transportation.  A fee attaches if freight is transported via air into the State of Hawaii.  The Freight Fee Law imposes one or more charges in connection with the sale of transportation of "property by aircraft," including (a) the Freight Fee "assessed on the net weight of the imported freight computed on the basis of 50 cents for every one thousand pounds of freight brought into the state, or part thereof"; and (b) the "fine of two times the amount of the inspection, quarantine, and eradication service fee or $50, whichever is higher" for each occurrence when the air carrier fails to bill or remit the Freight Fee.  *See Aloha Airlines, Inc. v. Director of Taxation of Hawaii*, 464 U.S. 7, 8 (1983) (AHTA preempted Hawaii statute that imposed "a tax on the gross income of airlines operating within the State"); *Tinicum Township Privilege Fee Proceeding*, Order 2008-3-18, Docket

OST-2007-29341, at 5 (holding that airport landing "privilege fee" as applied to passenger and cargo carriers violated and was preempted by the AHTA and suggesting that a fee would "constitute a prohibited charge on the sale of air transportation" if it was "imposed in connection with the sale of a ticket *or waybill*") (emphasis added).

48.     As an alternative to the relief requested in Count One, or following the DOT's exercise of its primary jurisdiction, the Court should enter a judgment declaring that the Freight Fee Law, as applied to air carriers, violates and is preempted by the Anti-Head Tax Act, 49 U.S.C. § 40116, and preliminarily and permanently enjoining enforcement of the Freight Fee Law against air carriers.

<u>COUNT THREE</u>

(The Airline Deregulation Act)

49.     Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as though fully set forth herein.

50.     The Freight Fee Law, as applied to air carriers, violates and is preempted by the ADA because the Freight Fee to be billed, collected and remitted by the air carrier, and the resulting fine for failure to do so, relate to the "price," "route" and "service" of the air carriers that are transporting freight into Hawaii.

a.     The Freight Fee and the associated fines relate to the "price" being charged by the air carriers because such charges, even if in "one

sense separate from the base" charge imposed for transportation of the freight, may nevertheless impact the "overall cost" of the air transportation being provided. *Buck, supra*, 476 F.3d at 35; *see also id.* at 36 ("It is freshman-year economics that higher prices mean lower demand, and that consumers are sensitive to the full price that they must pay, not just the portion of the price that will stay in the seller's coffers.  For that reason, an airline must account for the fees when setting its own rates") (cited with approval by the Ninth Circuit in *Sanchez, supra*, 590 F.3d at 1030).

> b.      The Freight Fee and the associated fines relate to the "service" of the air carrier because they require the air carrier – under threat of fines – to provide the "service" of billing, collecting and remitting fees on behalf of its shipper customers.  *See United Parcel Service, Inc. v. Flores-Galarza*, 318 F.3d 323 (1st Cir. 2003) (ADA preempted Puerto Rico law which imposed fines on air cargo carrier if it failed to require customers to provide certification that customers had paid state excise tax on shipment); *Federal Express Corp. v. California Public Utilities Comm'n*, 936 F.2d 1075, 1078 (9th Cir. 1991) (state regulation of trucking operations of air carrier – including "rates," "bills of lading," and "freight bills" – preempted by ADA) ("Most of the regulations . . . are obviously economic – they bear on price.  Those regulations which are not patently economic – the rules on claims and bills of lading, for example – relate to the terms on which the air carrier

offers its services"); *Sanchez v. Compania Mexicana de Aviacion S.A.*, Case No. CV-07-7196 R (RCx), 2008 U.S. Dist. LEXIS 86822, at *9-10 (March 25, 2008), *aff'd on other grds.*, 361 Fed. App. 751 (9th Cir. Jan. 5, 2010), (claim that an airline improperly imposed Mexican tourism tax on exempt passengers preempted by ADA because, *inter alia*, "collection of the tourism tax at the time of ticketing is a service facilitating the flow of passengers through the airports in Mexico"); *cf. Rowe, supra*, 552 U.S. 364 (Maine's tobacco delivery law preempted by Federal Aviation Administration Authorization Act because the law would "require[] [motor] carriers to offer a system of services that the market does not now provide (and which the carriers would prefer not to offer)").

      c.    The Freight Fee and the associated fines relate to the "route" of the air carrier because the financial and administrative burden imposed by the new law may impact whether and how the carrier chooses to serve the Hawaiian market. *See Sanchez v. Compania Mexicana de Aviacion, supra*, at *9-10 (challenge to airline collection of Mexican tourism tax preempted by ADA where it related to "route" of air carrier because the subject tax was "charged only on routes between Mexico and other countries").

      51.    As an alternative to the relief requested in Count One, or following the DOT's exercise of its primary jurisdiction, the Court should enter a judgment declaring that the Freight Fee Law, as applied to air carriers, violates and

is preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1), and preliminarily and permanently enjoining enforcement of the Freight Fee Law against air carriers.

## COUNT FOUR

### (42 U.S.C. § 1983/Supremacy Clause)

52.     Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as though fully set forth herein.

53.     The United States Constitution gives Congress the power to enact the "supreme Law of the Land; and Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

54.     The Freight Fee Law, as applied to air carriers, is invalid and unenforceable because it violates the Supremacy Clause of the Constitution of the United States, Article VI, in that it conflicts with Congressional directives in the Anti-Head Tax Act and the Airline Deregulation Act that airlines and their customers should be free from unwarranted state and local government interference with air carrier operations.

55.     As an alternative to the relief requested in Count One, or following the DOT's exercise of its primary jurisdiction, the Court should enter a judgment declaring that the Freight Fee Law, as applied to air carriers, violates and

is preempted by the Supremacy Clause, and preliminarily and permanently

enjoining enforcement of the Freight Fee Law against air carriers.

## COUNT FIVE

### (42 U.S.C. § 1983/Commerce Clause)

56.     Plaintiff repeats and realleges the foregoing paragraphs of the

Complaint as though fully set forth herein.

57.     Article I, § 8 of the United States Constitution provides that

"Congress shall have power . . . [t]o regulate commerce . . . among the several

states . . . ."

58.     Because the Freight Fee Law was intended to, and does,

discriminate against an out of state interest to benefit in state interests, it violates

the Commerce Clause of the Constitution of the United States, Article I, § 8,

actionable pursuant to 42 U.S.C. § 1983.

59.     As an alternative to the relief requested in Count One, or

following the DOT's exercise of its primary jurisdiction, the Court should enter a

judgment declaring that the Freight Fee Law, as applied to air carriers, violates and

is preempted by the Commerce Clause, 49 U.S.C. § 41713(b)(1), and preliminarily

and permanently enjoining enforcement of the Freight Fee Law against air carriers.

COUNT SIX

(42 U.S.C. § 1983/Import-Export Clause)

60.     Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as though fully set forth herein.

61.     The Freight Fee Law, as applied to air carriers, is invalid and unenforceable because it violates the Import-Export Clause of the Constitution of the United States, Article I, Section 10, Clause 2.

62.     The Import-Export Clause states:

> No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing it's inspection laws: and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the revision and control of the Congress.

63.     The Freight Fee Law requires the fees to be "assessed on the net weight of the *imported freight*." Haw. Rev. Stat. § 150A-5.3 (emphasis added). The statute is "imposed in a way that discriminates against interstate or foreign commerce." *See Auto Cargo, Inc. v. Miami Dade County*, 237 F.3d 1289, 1294 (11th Cir. 2001); *Western Oil and Gas Ass'n v. Cory*, 726 F.2d 1340, 1346 (9th Cir. 1983) ("[A]lthough the state regulations do not, by their terms, single out imported goods for assessment, this is the inevitable result.") It could thus have the effect of discouraging the importation of products covered by the statute.

64.     As an alternative to the relief requested in Count One, or

following the DOT's exercise of its primary jurisdiction, the Court should enter a

judgment declaring that the Freight Fee Law, as applied to air carriers, violates the

Import-Export Clause, and preliminarily and permanently enjoining enforcement

of the Freight Fee Law against air carriers.

COUNT SEVEN

(42 U.S.C. § 1983/Equal Protection Clause)

65.     Plaintiff repeats and realleges the foregoing paragraphs of the

Complaint as though fully set forth herein.

66.     The Equal Protection Clause of the Fourteenth Amendment of

the United States Constitution provides that "no State shall . . . deny to any person

within its jurisdiction the equal protection of the laws."

67.     Defendant Kunimoto has stated that the Freight Fee Law does

not apply to U.S. mail.

68.     There is no rational basis for treating the U.S. Postal Service

differently than private carriers.  All of the carriers operate in the same basic

manner.  And all of the carriers enjoy some form of immunity from regulation by a

state.  In the case of the Postal Service, the Supremacy Clause, art. VI, clause 2 of

the United States Constitution, forbids a state from directly regulating the activities

of an agency of the federal government in the same way that the ADA forbids a

state from regulating a private air carrier's prices, routes, or services. Hawaii's choice to ignore the effect of the ADA (and the AHTA), while recognizing the Postal Service's analogous immunity, constitutes disparate treatment with no rational basis in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

69.     The Freight Fee Law also treats carriers of articles in interstate commerce differently than their local intrastate carrier competitors by shifting to interstate carriers the responsibility of billing and remitting the Freight Fee, while intrastate carriers have no such obligation. Interstate and intrastate carriers operate in substantially the same manner. Both interstate and intrastate carriers receive freight for shipment by a consignor or shipper, and in turn transport and deliver the freight to a consignee or purchaser. The Hawaiian government's choice to impose these additional requirements interstate carriers, but not on intrastate carriers, constitutes disparate treatment with no rational basis in the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

70.     As an alternative to the relief requested in Count One, or following the DOT's exercise of its primary jurisdiction, the Court should enter a judgment declaring that the application of the Freight Fee law to air carriers violates the Equal Protection Clause, and preliminarily and permanently enjoining enforcement of the Freight Fee Law against air carriers.

## COUNT EIGHT

(42 U.S.C. § 1983/Due Process Clause)

71.     Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as though fully set forth herein.

72.     The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides that no State shall "deprive any person of . . . property, without due process of law."

73.     The retroactive application of Act 173 is invalid and unenforceable because it violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

74.     In written comments to the Hawaii State House Committee on Finance dated March 26, 2010, the Hawaiian Department of the Attorney General stated that "[b]y making section 2 retroactive to July 1, 2007, fines for failure to timely pay, bill, or remit the inspection fee would be made retroactive to that date. This would violate constitutional due process because the punished behavior was not punishable at the time the behavior occurred."  Comments, at 1-2.

75.     As an alternative to the relief requested in Count One, or following the DOT's exercise of its primary jurisdiction, the Court should enter a judgment declaring that the retroactive application of Act 173 violates the Due

Process Clause, and preliminarily and permanently enjoining retroactive

enforcement of the Freight Fee Law against air carriers.

## COUNT NINE

(42 U.S.C. § 1983/Takings Clause Violation)

76.     Plaintiff repeats and realleges the foregoing paragraphs of the

Complaint as though fully set forth herein.

77.     The United States Constitution provides in pertinent part that

"[n]or shall private property be taken for public use, without just compensation."

U.S. Const. amend. V.

78.     The takings clause is made applicable to the states through the

Fourteenth Amendment.

79.     As a condition of providing interstate and international delivery

service to consignees in Hawaii, or in order to comply with the requirements of the

Freight Fee Law, Plaintiff's air carrier members are forced to bill the Freight Fee to

their customers and to remit payment of the Freight Fee by their customers to

HDOA.  In addition, HDOA has asserted that air carriers must collect the Freight

Fee from their customers.

80.     The costs to Plaintiff's air carrier members to comply with the

Freight Fee Law is substantial.  The air carriers have a vested property interest in

such money.  The Freight Fee Law permanently and irreparably deprives the air carriers of such private property without just compensation.

81.    As an alternative to the relief requested in Count One, or following the DOT's exercise of its primary jurisdiction, the Court should enter a judgment declaring that the Freight Fee Law effects an unlawful taking on air carriers, and preliminarily and permanently enjoining enforcement of the Freight Fee Law against air carriers.

## COUNT TEN

### (42 U.S.C. § 1983/Ex Post Facto)

82.    Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as though fully set forth herein.

83.    The Ex Post Facto Clause of the United States Constitution, Article I, § 10, provides that "[n]o State shall . . . pass any . . . *ex post facto* law . . . ."

84.    Act 173 retroactively changes the rights and obligations of subject air carriers and imposes a new penalty on the air carrier's rights.  Because the retroactive application of Act 173 violates the Ex Post Facto Clause of Article I, § 10 of the United States Constitution, it is actionable pursuant to 42 U.S.C. § 1983.

85.     ATA recognizes that the United States Supreme Court has historically interpreted the Ex Post Facto Clause to apply only to criminal statutes. However, at least one Justice of the Supreme Court of the United States has called for the re-examination of its application to civil statutes. *See Eastern Enters. v. Apfel*, 524 U.S. 498, 538-39 (1998) (Thomas, J., concurring) (explaining historical limitation of the Ex Post Facto Clause and expressing willingness to reconsider this limitation "[i]n an appropriate case"). ATA believes that the retroactive imposition of new fines for past acts or omissions by its member air carriers makes this an appropriate case in which to apply the Ex Post Facto Clause to retroactive civil legislation. ATA accordingly includes this claim to ask for the Court's consideration of whether this case warrants application of the Ex Post Facto Clause and to preserve this claim for appellate review.

86.     As an alternative to the relief requested in Count One, or following the DOT's exercise of its primary jurisdiction, the Court should enter a judgment declaring that the retroactive application of Act 173 violates the Ex Post Facto Clause, and preliminarily and permanently enjoining retroactive enforcement of the Freight Fee Law against air carriers.

## COUNT ELEVEN

(Preemption Under the Agriculture Risk Protection Act)

87.    Plaintiff repeats and realleges the foregoing paragraphs of the Complaint as though fully set forth herein.

88.    The federal Agriculture Risk Protection Act of 2000 ("ARPA") preempts the states from regulating goods for invasive species when in foreign commerce.   The relevant portion of ARPA is the Plant Protection Act ("PPA"), 7 U.S.C.  §§ 7701, *et. seq.*   The PPA provides that "No State or political subdivision of a State may regulate in foreign commerce any article, means of conveyance, plant, biological control organism, plant pest, noxious weed, or plant product in order -- (1) to control a plant pest or noxious weed; (2) to eradicate a plant pest or noxious weed; or (3) [to] prevent the introduction or dissemination of a biological control organism, plant pest, or noxious weed."  7 U.S.C. § 7756(a).

89.    The Freight Fee Law is preempted by ARPA and the PPA because it regulates the importation of goods transported to Hawaii in foreign commerce for the purpose of inspecting them for containing invasive species.

90.    Pursuant to the PPA, except for circumstances not present here, "no State or political subdivision of a State may regulate the movement in interstate commerce of any article, means of conveyance, plant, biological control organism, plant pest, noxious weed, or plant product in order to control a plant pest

or noxious weed, eradicate a plant pest or noxious weed, or prevent the introduction or dissemination of a biological control organism, plant pest, or noxious weed, if the Secretary [of Agriculture or the Department of Homeland Security ("DHS")] has issued a regulation or order to prevent the dissemination of the biological control organism, plant pest, or noxious weed within the United States." 7 U.S.C. § 7756(b)(1). The Freight Fee Law does not fall within the "exception" listed in 7 U.S.C. § 7756(b)(2) because, *inter alia*, the Freight Fee Law "exceed[s] the regulations or orders issued by the Secretary" of Agriculture or DHS and there has been no finding by the Secretary that "there is a special need" based on "sound scientific data or a thorough risk assessment" for the burdens imposed on air carriers by the Freight Fee Law.

91.    The Freight Fee Law is preempted by the ARPA and the PPA because it regulates the importation of goods transported to Hawaii in interstate commerce for the purpose of inspecting them for containing invasive species without complying with the exceptions provided in 7 U.S.C. § 7756(b)(2).

92.    As an alternative to the relief requested in Count One, or following the DOT's exercise of its primary jurisdiction, the Court should enter a judgment declaring that the Freight Fee Law is preempted in whole or in part by the ARPA and the PPA, and preliminarily and permanently enjoining retroactive enforcement of the Freight Fee Law against air carriers.

## ATTORNEYS' FEES

93.     Awards of attorneys' fees are available for the successful vindication of constitutional rights.  The availability of attorneys' fees serves the important public interest of deterring the enactment of unconstitutional legislation.

94.     The Freight Fee Law is currently causing material damage to the ATA's member air carriers, including the cost of litigation.  In these circumstances, the Defendants, in their official capacity as the representatives of the government of Hawaii, should be ordered to pay ATA's reasonable legal fees.

## PRAYER FOR RELIEF

WHEREFORE, ATA prays for the following relief:

(a)     A judgment declaring that the U.S. Department of Transportation has primary jurisdiction to determine the lawfulness of Hawaii Revised Statute § 150A, as amended by Act 173 (the "Freight Fee Law") as applied to air carriers;

(b)     A judgment declaring that the application of the Freight Fee Law to air carriers violates the Constitution and laws of the United States;

(c)     An injunction restraining and enjoining Defendant Governor and Defendant Chairperson (and their divisions, officers, servants, employees, attorneys, agents, and representatives, successors-in-office and all persons acting or purporting to act in concern or in cooperation with Defendants or pursuant to

Defendants' authority from enforcing the Freight Fee Law with regard to air carriers;

(d)     An award of reasonable attorneys' fees, costs and other expenditures incurred as a result of bringing this action, pursuant to 42 U.S.C. § 1988, and other applicable laws; and

(e)     Such other relief as this Court deems just and proper.

DATED: Honolulu, Hawai'i, July 28, 2010

_____
BRUCE L. LAMON

Attorneys for Plaintiff
AIR TRANSPORT ASSOCIATION OF
AMERICA, INC.

OF COUNSEL

M. Roy Goldberg (Pro Hac Vice Admission Pending)
Christopher M. Loveland (Pro Hac Vice Admission Pending)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1300 I Street, N.W., Suite 1100-East
Washington, D.C. 20005-3314
Telephone (202) 218-0007
Facsimile (202) 312-9425